IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-03098-NYW-KAS

MARK C. BEACHLEY,

    Plaintiff,

v.

PALISADES FUNDING, CORP., and
TRANS UNION, LLC,

    Defendants.

---

## ORDER

---

This matter comes before the Court on Defendant's Motion to Dismiss ("Motion to Dismiss"), [Doc. 16, filed December 22, 2023], filed by Defendant Palisades Funding, Corp. ("Palisades" or "Defendant").[1]  The Motion to Dismiss is opposed by Plaintiff Mark C. Beachley ("Plaintiff" or "Mr. Beachley").  The Court finds that oral argument will not materially assist in the disposition of the Motion to Dismiss.  Upon review of the Parties' briefing, the entire docket, and the applicable case law, this Court respectfully **GRANTS** the Motion to Dismiss.

---

[1] Defendant filed a separate Brief in Support of Its Motion to Dismiss. [Doc. 17]. This District's Local Rules contemplate that all argument and authority that supports a motion will be included in the motion itself, rather than in a separate brief.  D.C.COLO.LCivR 7.1(d). In addition, Plaintiff's Response is single-spaced, in violation of D.C.COLO.LCivR 10.1(e).  For purposes of efficiency, this Court considers these materials instead of striking them for non-compliance. Fed. R. Civ. P. 1; *King v. Rosek Co.,* No. 11-cv-01685-CMA-MJW, 2012 WL 13013456, at *1 (D. Colo. Nov. 27, 2012) (observing that a district court has discretion to strike materials that are not compliant with the Local Rules).

## BACKGROUND

The following allegations from the Complaint and Demand for Jury ("Complaint"), [Doc. 7-3], are taken as true for the purposes of this Order.[2]  Mr. Beachley lives in Colorado and works in the finance industry.  [*Id.* at ¶¶ 2, 14].  In 2021, he encountered an online advertisement for a 2015 Lexus RCF and decided to buy the vehicle from nonparty 26 Motors, the advertiser and seller.  [*Id.* at ¶ 15].  The posted price was $39,950.  [*Id.*].  Plaintiff put $35,000 down and sought to finance the remaining $4,950.  [*Id.* at ¶¶ 16–17].  The vehicle was financed through Palisades.  [*Id.* at ¶ 17].

26 Motors, acting as Palisades's agent, presented Plaintiff with loan documents on November 15, 2021.  [*Id.*].  26 Motors and Palisades have "common ownership and employees."  [*Id.* at ¶ 11].  Although the difference between the purchase price and the amount Mr. Beachley had put down was only $4,950, the documents supplied by 26 Motors contemplated a $62,000 loan.  [*Id.* at ¶ 17].  Plaintiff, unaware of this discrepancy, signed the documents and began making monthly payments.  [*Id.* at ¶¶ 18–19].  Upon "inspecting the loan documents in detail," however, Plaintiff noticed that the loan amount had been "inflated."  [*Id.* at ¶ 20].

Palisades then advised several credit reporting agencies that Plaintiff defaulted on the vehicle loan.  [*Id.* at ¶ 21].  Unable to resolve the issue, Plaintiff sued 26 Motors in the United States District Court for the Southern District of New York.  [*Id.* at ¶ 22].  Through that litigation, Plaintiff allegedly "discovered Palisades' role in the fraud."  [*Id.* at ¶ 23].  On November 30, 2022, Plaintiff, 26 Motors, and Palisades entered into an agreement to

---

[2] The Court discusses additional factual material submitted in connection with the Parties' jurisdictional briefing throughout the analysis below.

2

resolve the New York litigation (the "Settlement Agreement"), pursuant to which Palisades would "remove all entries pertaining to Beachley and this car loan" from several credit bureaus. [*Id.* at ¶¶ 24–25].

Mr. Beachley filed this action in Colorado state court on October 5, 2023. [*Id.* at 8]. In the Complaint, he alleges that Palisades has failed to comply with the Settlement Agreement by declining to correct erroneously reported credit information and even confirming inaccurate information when contacted by fellow Defendant Trans Union, LLC ("Trans Union"). [*Id.* at ¶¶ 26–27]. Plaintiff alleges that his Trans Union credit reports have "continued to show derogatory accounts related to the fraudulent loan" which Trans Union refuses to correct. [*Id.* at ¶¶ 29–30]. Seeking damages, Plaintiff brings one claim against Trans Union under the Colorado Consumer Credit Reporting Act and one claim against Palisades for common law fraud. [*Id.* at ¶¶ 31–42]. The fraud claim alleges that the "[s]tatement[] contained in the Settlement Agreement that Palisades would cooperate with the correct reporting of the loan to the various credit reporting agencies was a material representation," which Plaintiff "reasonably and justifiably relied upon" to his detriment. *See* [*id.* at ¶¶ 38–42].

On November 21, 2023, before Palisades entered an appearance in state court, Trans Union removed this case to federal court, invoking diversity jurisdiction under 28 U.S.C. § 1332. [Doc. 1 at ¶¶ 4, 13]. Palisades subsequently moved to dismiss. [Doc. 16; Doc. 17]. The motion is fully briefed, [Doc. 28; Doc. 39], and ripe for decision.

## LEGAL STANDARD

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to challenge the court's exercise of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "[P]laintiffs bear the burden of establishing personal jurisdiction." *Dudnikov v. Chalk &*

3

*Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008).  When, as here, a court decides a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion."  *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008); *see also id.* at 1056 ("[I]n the preliminary stages of litigation, the plaintiff's burden is light.").  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."  *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).  In considering this question, a court must accept all well-pleaded facts as true and resolve any factual disputes in favor of the plaintiff.  *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *see also Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1189 (D. Colo. 1999) (noting that the Court "must resolve all disputed facts and draw all reasonable inferences in the plaintiff's favor").

## ANALYSIS

The Motion to Dismiss contends that the Court lacks personal jurisdiction over Palisades under Rule 12(b)(2) and that, in the event the Court has jurisdiction, the Complaint fails to state a claim for fraud under Rule 12(b)(6).  The Court finds that it cannot exercise personal jurisdiction over Palisades under Rule 12(b)(2).  Accordingly, the Court does not reach the Rule 12(b)(6) argument.

### I.   Personal Jurisdiction, Generally

"The requirement that a court have personal jurisdiction flows from the Due Process Clause.  It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty."  *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000) (cleaned up).  "To obtain personal jurisdiction

4

over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far W. Cap., Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) (emphasis omitted).  However, "Colorado's long-arm statute, Colo. Rev. Stat. § 13-1-124, extends jurisdiction to the [United States] Constitution's full extent.  The personal jurisdiction analysis here is thus a single due process inquiry." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (citations omitted).

"To exercise jurisdiction in harmony with due process, defendants must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend traditional notions of fair play and substantial justice." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (quotation and alteration omitted); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  A defendant's contacts may give rise to general or specific personal jurisdiction.  *See Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).  General jurisdiction arises when a defendant's contacts with the forum state are so continuous and systematic as to essentially render it "at home" in that state.  *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014).  Specific jurisdiction is particular to the instant action and arises where a defendant purposefully directs its activities to residents of the forum, and the cause of action arises out of those activities.  *See Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1066 (10th Cir. 2007).

"Specific jurisdiction . . . is premised on something of a *quid pro quo*:  in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is

5

deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov*, 514 F.3d at 1078.  The analysis turns on a host of nondispositive factors.  For example, a nonresident's contract with a forum resident is insufficient, by itself, to establish jurisdiction.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985).  Relatedly, "'[f]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980).  And "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State," the Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."  *Burger King Corp.*, 471 U.S. at 476 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)).  Instead, "with respect to interstate contractual obligations, . . . parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."  *Id.* at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)).  And for tort claims, "'purposeful direction' has three elements: (a) an intentional action that was (b) expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state."  *Newsome v. Gallacher*, 722 F.3d 1257, 1264–65 (10th Cir. 2013) (cleaned up).

The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts."  *Burger King Corp.*, 471 U.S. at 475 (quotation omitted).  Rather, "the contract relied upon to establish minimum contacts must have a 'substantial connection' with the forum state."  *TH Agric. & Nutrition, LLC v. Ace Euro. Grp. Ltd.*, 488 F.3d 1282, 1288 (10th Cir. 2007)

6

(quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)); *see also Burger King Corp.*, 471 U.S. at 475 n.18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction."). "To determine whether a nonresident defendant has purposefully established minimum contacts with the forum state by contracting with another party, we therefore examine 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *TH Agric. & Nutrition, LLC*, 488 F.3d at 1288 (quoting *Burger King Corp.*, 471 U.S. at 479). In this regard, "[p]hone calls, letters, facsimiles, and emails 'provide additional evidence that [a foreign defendant] pursued a continuing business relationship with [a plaintiff].'" *AST Sports Sci., Inc.*, 514 F.3d at 1059 (quoting *Pro Axess v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1278 (10th Cir. 2005)); *see also id.* ("[M]odern communications can eliminate the need for physical presence."). "In proper circumstances, even a single letter or telephone call to the forum state may meet due process standards." *Rambo v. Am. So. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988). "The proper focus for analyzing these contacts is whether they represent an effort by the defendant to 'purposefully avail[ ] itself of the privilege of conducting activities within the forum State.'" *Id.* at 1419 (alteration in original) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Finally, even if a defendant's minimum contacts with the forum state give rise to the cause of action at bar, courts may not exercise specific personal jurisdiction over a foreign defendant where doing so would offend "traditional notions of fair play and substantial justice." *Dudnikov*, 514 F.3d at 1071. That inquiry implicates the following factors: "(1) the burden on the defendant, (2) the forum state's interest in resolving the

7

dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *OMI Holdings, Inc.*, 149 F.3d at 1095. "The reasonableness prong of the due process inquiry evokes a sliding scale:  the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1079 (10th Cir. 2004) (cleaned up).

## II.     Personal Jurisdiction over Palisades

In the Motion to Dismiss, Palisades asserts that Plaintiff cannot establish either general or specific personal jurisdiction. *See* [Doc. 17 at 8–12]. In support of this argument, Palisades attaches an affidavit from Michael Jordan ("Mr. Jordan"), one of the company's executives, who attests to various facts about its business activities. *See* [Doc. 18 at 3–4].

According to Mr. Jordan, Palisades is a "sales finance company" based in Montville, New Jersey, which holds state banking licenses in only New York and New Jersey. [*Id.* at ¶ 3]. Palisades "negotiates loan agreements, issues and enters into loan agreements, and collects payments from customers" at the New Jersey headquarters. [*Id.*]. Mr. Jordan attests that Plaintiff entered into the loan agreement for the subject vehicle at 26 Motors's physical location in New York, and that Palisades "negotiated and issued the loan to Mr. Beachley from its headquarters" in New Jersey. [*Id.* at ¶ 4]. Palisades also executed the Settlement Agreement and "conducted all activities regarding its duties under the [Settlement Agreement]" from its New Jersey headquarters.

[*Id.* at ¶ 5]. And all of Defendant's communications with credit bureaus with respect to Plaintiff and his credit took place from New Jersey. [*Id.* at ¶ 3].

Mr. Jordan further attests that Palisades has no employees, real estate, locations, offices, independent contractors, representatives, or agents in Colorado, and that while it maintains a generally accessible website it does not advertise online and "in no way purposefully directs online activity, advertising, or marketing into the state of Colorado with the intent of engaging in business in Colorado." [*Id.* at ¶¶ 6–7]. Finally, and contrary to the Complaint, Mr. Jordan states that Palisades "does not have any common ownership or any common employees with 26 Motors." [*Id.* at ¶ 8].

In his response, Plaintiff concedes that "general jurisdiction is probably unavailable" here. [Doc. 28 at ¶ 23]. Given that Plaintiff is a New Jersey corporation headquartered in New Jersey, *see* [Doc. 34], this Court concludes that Plaintiff has failed to sustain his burden of establishing general jurisdiction.

However, Plaintiff argues that specific jurisdiction is present. Plaintiff recognizes that "a finance company does not by virtue of the nature of its business have 'minimum contacts' with a plaintiff located in another jurisdiction automatically," but contends that the Settlement Agreement changed things.[3] [Doc. 28 at ¶¶ 33–34]. Plaintiff argues that minimum contacts exist because the Settlement Agreement recognized that he was a

---

[3] Plaintiff also suggests in passing that personal jurisdiction may have preceded the Settlement Agreement with Palisades: "Admittedly, and standing alone, prior to the loan agreement, Defendant's contacts with this jurisdiction fall short of the 'minimum contacts' standard. That was true—until it was sued in New York District Court." [Doc. 28 at ¶ 32]. The Court finds this notion meritless. On the facts, Plaintiff has not alleged that he previously sued Palisades in any jurisdiction. *See, e.g.*, [Doc. 7-3 at ¶ 22 (Plaintiff alleging that he sued 26 Motors in New York)]. On the law, Plaintiff provides no authority for the proposition that a litigant may hale an adversary into the litigant's forum of choice simply by first suing them elsewhere. *See generally* [Doc. 28].

9

Colorado resident, "Defendant's compliance with the agreement directly affected" him, and Defendant "intentionally violated the agreement" as alleged in the Complaint. [*Id.* at ¶ 35]; *see also* [*id.* at ¶ 36 ("[T]he lawsuit and subsequent Settlement Agreement contemplated performance within this jurisdiction, affecting a resident of this jurisdiction.")].

Plaintiff's Response appends several documents. First, Plaintiff includes a copy of the Settlement Agreement with Palisades and 26 Motors. *See* [Doc. 28-1]. The Settlement Agreement specifies a Colorado address for Plaintiff and contemplates potential enforcement proceedings, but does not contain any forum-related provisions. *See* [*id.* at 1–2]. Second, Mr. Beachley has submitted a declaration in which he attests to his residency in Denver and to the accuracy of the representations in the Response. [Doc. 28-2 at ¶¶ 1, 5]. As the Response never references Mr. Beachley's declaration, the Court takes this filing as an attempt to provide an evidentiary basis for any jurisdictionally relevant facts in Plaintiff's briefing that do not appear in his Complaint. From the Court's review, however, the only new assertions in the Response are: (1) that "Plaintiff has had a career in the credit industry, including performing services as a Loan Officer, Account Manager, and Digital Marketing firm account/profile manager"; (2) that Plaintiff's unawareness of the loan amount discrepancy was "rather foolish[]," and (3) that Palisades and 26 Motors shared an address. *See* [Doc. 28 at ¶¶ 1, 4, 6]. None of this has any relevance to the Court's exercise of personal jurisdiction over Palisades.[4] Finally, Plaintiff

---

[4] The Parties dispute the relationship between Palisades and nonparty 26 Motors, so the Court, for the purposes of this instant Motion, accepts Plaintiff's assertions as true. *See Wenz*, 55 F.3d at 1505. However, any relationship is immaterial to personal jurisdiction. To be sure, the Complaint centers its jurisdictional allegations on the supposed relationship between these two entities. *See* [Doc. 7-3 at ¶ 11 (alleging that Palisades engaged in minimum contacts with Colorado and then discussing its relationship with 26

has filed several documents from his prior litigation against 26 Motors, including the summons, a pleading, and various documents associated with the underlying vehicle purchase. *See generally* [Doc. 28-3]. Plaintiff does not explain how any of this bears on personal jurisdiction over Palisades, and the Court cannot independently discern any relevance. *See generally* [Doc. 28].[5]

Although Plaintiff recites case law regarding purposeful direction in the personal-jurisdiction context, *see, e.g.,* [*id.* at ¶ 37], his allegations do not show that Palisades purposefully directed sufficient activities toward Colorado to support exercising this Court's jurisdiction. As the Court reads the Complaint and documents submitted in connection with the Motion to Dismiss, Palisades settled a New York dispute with Plaintiff in a way that contemplated Palisades taking certain action with respect to credit bureaus, and the failure of Palisades to comply with its obligations allegedly renders it liable for fraud. But the mere existence of the Settlement Agreement is insufficient to establish

---

Motors and the latter's online advertisements that reached Plaintiff in Colorado and led to the purchase of the subject vehicle)]. And the Motion to Dismiss tracked this jurisdictional theory. *See* [Doc. 17 at 11–12]. But Plaintiff, who bears the burden on jurisdiction, does not pursue this argument in his brief. *See* [Doc. 28 at ¶¶ 23–42]; *see also* [Doc. 39 at 3 ("In his Response, Plaintiff disregards the jurisdictional facts pled in the Complaint, *i.e.*, that Palisades has common ownership with 26 Motors and 26 Motors advertised to Plaintiff via the internet, and proffers a new, unsupported theory that the SAR, formed in the State of New York, somehow subjects Palisades to this Court's jurisdiction.")]. Even if this argument were before the Court, however, Plaintiff exclusively alleges that the online advertisements were distributed by 26 Motors, not Palisades, and Plaintiff provides no authority supporting the Court's jurisdiction over Palisades under such circumstances. *See* [Doc. 7-3 at ¶ 11]; *see generally* [Doc. 28].

[5] Palisades makes evidentiary objections to certain of these documents. *See* [Doc. 39 at 2–3]. The Court need not evaluate these objections, however, because these documents do not alter the Court's personal jurisdiction analysis. *See* [*id.* at 1 (arguing that, "[e]ven if the Court overrules Palisades's evidentiary objections contained herein, Plaintiff's self-serving, generic declaration and the [Settlement Agreement] fail to controvert Palisades's jurisdictional evidence")].

jurisdiction, notwithstanding Plaintiff's Colorado residency.  *See Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1230 (10th Cir. 2020) ("[A]n out-of-state resident's contract with a resident of the forum state is insufficient, standing alone, to create personal jurisdiction.").

To the extent Plaintiff suggests that Defendant's alleged noncompliance with the Settlement Agreement "directly affected" him for purposes of his fraud claim under the "effects test" for tort claims, [Doc. 28 at ¶¶ 35, 39–40], "[p]urposeful direction in [the tort] context has three elements:  (1) an intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state." *Dental Dynamics, LLC*, 946 F.3d at 1231.  Here, even as he recognizes that "minimum contacts in the forum state must be ones created by the defendant through his own conduct," [Doc. 28 at ¶ 40], Plaintiff does not explain how Defendant "expressly aimed" any of its conduct at Colorado, nor does Plaintiff specifically articulate how any of Defendant's conduct affected Colorado.  Plaintiff does not address or rebut Mr. Jordan's submission that all communications between Palisades and the credit bureaus originated from New Jersey, [Doc. 18 at ¶ 3], and there is no suggestion that Palisades directed any of these communications to Colorado, *see Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 969 (10th Cir. 2022) (under the effects test, "the forum state must be the 'focal point' of the defendant's tortious conduct" (emphasis omitted)).  Accordingly, even if Palisades acted intentionally and knew that Plaintiff would be injured in Colorado where he resided, the second element of the "effects test" is not satisfied.  *See Dental Dynamics, LLC*, 946 F.3d at 1232 (in fraud claim based on contract, "allegedly fraudulent misrepresentations and isolated incidents of outreach" were "insufficient to establish [that defendant]

'expressly aimed' his allegedly tortious misrepresentations at Oklahoma," even where defendant "knew [plaintiff] was an Oklahoma entity").

Plaintiff asserts that "[p]ersonal jurisdiction has also been found where the defendant knew or should have known that the disputed consumer report would have adverse effects in the plaintiff's forum." [Doc. 28 at ¶ 41]. But Plaintiff's cases are nonbinding and distinguishable. *See Turner v. Regions Bank*, 770 F. Supp. 2d 1244, 1249–52 (M.D. Ala. 2011) (defendant attempted to collect debt in forum state in violation of injunction issued by forum state court); *Rivera v. Bank One*, 145 F.R.D. 614, 624 (D.P.R. 1993) (defendant "voluntarily and purposefully generated contacts with this forum in an effort to collect the outstanding debt"); *Mitchell v. BancFirst*, No. 2:17-cv-02036-CM-JPO, 2018 WL 338217, at *4 (D. Kan. Jan. 9, 2018) (defendant "expressly aimed its activity at Kansas by contacting plaintiff in Kansas regarding the inaccuracies, while still failing to correct the misinformation which, therefore, caused injury to plaintiff in Kansas"); *Williams v. Student Loan Guarantee Found. of Ark.*, No. 5:12-cv-02940-MHH-JHE, 2015 WL 241428, at *1 (N.D. Ala. Jan. 20, 2015) (personal jurisdiction waived; no claim for fraud).[6] Unlike in these cases, Plaintiff's Complaint does not allege that Palisades directed any intentional contact toward Colorado. *See, e.g.*, *Cole v. Am. Fam. Mut. Ins. Co.*, 333 F. Supp. 2d 1038, 1047 (D. Kan. 2004) ("The mere allegation of an intentional tort, coupled with the injury of a forum resident, does not automatically establish personal jurisdiction over a nonresident defendant."). And Plaintiff's common law fraud claim

---

[6] To the extent the *Williams* court held in the alternative that personal jurisdiction existed because the defendant "could anticipate that the effects of its actions would be felt in" the forum state, *Williams*, 2015 WL 241428, at *2, that is not the standard in the Tenth Circuit, *see Dental Dynamics, LLC*, 946 F.3d at 1231–32.

against Palisades does not arise under the Fair Credit Reporting Act ("FCRA"), which would implicate particular jurisdictional considerations. *Cf. Smith v. Cutler*, 504 F. Supp. 2d 1162, 1167 (D.N.M. 2007) (noting that "courts which have addressed the issue of personal jurisdiction in cases involving alleged FCRA violations resulting from authorized credit inquiries, view these cases *sui generis*").[7]

In short, Plaintiff has failed to establish that Palisades has minimum contacts with Colorado that give rise to personal jurisdiction in this case. *See* [Doc. 39 at ¶ 10 (noting that "Plaintiff alleges that Palisades violated the terms of the [Settlement Agreement] that was formed in New York as a result of litigation in New York . . . arising from the sale of a car in New Jersey")]. To the extent this litigation arises from the Settlement Agreement, that contract has no connection to the forum state aside from Plaintiff's Colorado residency, which is insufficient to support the exercise of personal jurisdiction. *See Dental Dynamics, LLC*, 946 F.3d at 1230. To the extent this litigation arises from Palisades reporting inaccurate information to credit bureaus, there is no allegation that such activity was expressly aimed toward Colorado. *See Clear Spring Prop. & Cas. Co. v. Arch Nemesis, LLC*, No. 2:22-cv-02435-DDC-TJJ, 2023 WL 6123741, at *8 (D. Kan. Sept. 19, 2023) (assessing minimum contacts under both contract and tort frameworks for fraud claim that was "grounded in a contract"). The Court respectfully concludes that Plaintiff has failed to meet his prima facie burden as to personal jurisdiction over Palisades.

---

[7] At one point in Plaintiff's brief, Plaintiff states that "the genesis of the dispute with [Palisades] is that it violated [the] FCRA by violating the terms of [the] Settlement Agreement." [Doc. 28 at ¶ 34]. But Plaintiff makes no claim under the FCRA. *See generally* [Doc. 7-3]. And a plaintiff cannot amend its pleading by raising new allegations in responding to a motion to dismiss. *Sudduth v. CitiMortgage, Inc.*, 79 F. Supp. 3d 1193, 1198 n.2 (D. Colo. 2015).

Accordingly, the Motion to Dismiss is **GRANTED** and Plaintiff's fraud claim against Palisades is **DISMISSED without prejudice**.[8]

### CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1) Defendant's Motion to Dismiss [Doc. 16] is **GRANTED**;

(2) Plaintiff's fraud claim against Defendant Palisades Funding, Corp. is **DISMISSED without prejudice**; and

(3) The Motion for Temporary Stay Pending Resolution of Defendant Palisades Funding, Corp.'s Motion to Dismiss [Doc. 46] is **DENIED as moot**.

DATED: April 29, 2024

BY THE COURT:

_____
Nina Y. Wang
United States District Judge

---

[8] Palisades seeks dismissal with prejudice, [Doc. 17 at 15], but a dismissal for lack of jurisdiction must be without prejudice because the court "lack[s] jurisdiction to make a determination on the merits," *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). Additionally, having dismissed the case as against Palisades, the Court withdraws the referral of the pending Motion for Temporary Stay Pending Resolution of Defendant Palisades Funding, Corp.'s Motion to Dismiss ("Motion to Stay") filed by Palisades, [Doc. 46], which had been referred to the Honorable Kathryn A. Starnella, [Doc. 47]. As Palisades is no longer party to this case, the Motion to Stay is **DENIED as moot**.